Jonathan Shub (237708)
Kohn Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone:  215-238-1700
Facsimile:   215-238-1968
Email:    jshub@kohnswift.com

Attorneys for Plaintiffs
[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brandon Martinez, Jeff Pile and Diana Rodriguez, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>Toshiba America Information Systems, Inc.; Toshiba Corporation; Toshiba Lifestyle Products & Services Corporation,<br><br>       Defendants. | CASE NO. 2:16-cv-02551<br><br>**COMPLAINT**<br><br>**Demand for Jury Trial** |

1    Brandon Martinez, Jeff Pile, and Diana Rodriguez (collectively, "Plaintiffs"),
2  by and through Plaintiffs' undersigned attorneys, on behalf of themselves as well as
3  the proposed classes (defined *infra*), demanding trial by jury of all claims properly
4  triable thereby, make the following allegations and claims against Defendants
5  Toshiba America Information Systems, Inc. ("TAIS"), Toshiba Corporation, and
6  Toshiba Lifestyle Products & Services Corporation ("TLSC," and collectively with
7  TAIS and Toshiba Corporation, "Defendants" or "Toshiba").

8
9                            **JURISDICTION**
10   1.    This Court has jurisdiction over all causes of action asserted herein
11  pursuant to the Class Action Fairness Act.  28 U.S.C. § 1332(d).

12
13                        **PRELIMINARY STATEMENT**
14   2.    This action is brought by Plaintiffs, on behalf of Plaintiffs and the
15  proposed classes, to recover damages and restitution in connection with the purchase
16  of Toshiba-brand televisions that were falsely marketed and advertised by Toshiba
17  as "LED TVs," "LED HDTVs" or "LED televisions."  Plaintiffs and the proposed
18  classes also seek an injunction:  (a) requiring Toshiba to engage in a corrective
19  advertising campaign to alert consumers as to the true nature of these televisions;
20  (b) prohibiting Toshiba from continuing falsely to market and advertise such
21  televisions as "LED TVs," "LED HDTVs," or "LED televisions"; and (c) requiring
22  Toshiba to recall and re-label all such televisions that have already been distributed
23  for re-sale, but not yet sold to retail customers.
24   3.    The televisions at issue are not "LED TVs," but instead are **LCD** TVs
25  that use light emitting diodes (LEDs) instead of cold cathode fluorescent lights
26  (CCFLs) to light the liquid crystal display (LCD) panel that is present in each of the
27  televisions at issue.
28

4.      Toshiba's failure to disclose that its references to LED refer to the light source that illuminates the LCD panel, **instead of the display technology itself,** and its nondisclosure and concealment that each of the televisions is otherwise functionally identical to televisions that are advertised and sold as "LCD TVs," were at all times knowing, intentional, and intended to mislead consumers.  Toshiba's false and misleading marketing and advertising were and are designed falsely to suggest that the televisions at issue are not LCD TVs at all, but an entirely different, improved, and technologically advanced class or species of television.  This is false; all of these televisions are LCD TVs.

5.      Toshiba has used and continues to use this deception:  (a) to induce customers to purchase Toshiba's so-called LED TVs in the mistaken belief that they are upgrading from their existing CCFL-lit LCD TVs; (b) to charge a premium for such televisions that Plaintiffs and other consumers would not have paid had the televisions been accurately labeled and described; and (c) to capture sales from other brand televisions that were accurately labeled as LED-lit LCD TVs.

6.      Toshiba has perpetrated a massive consumer fraud upon thousands of unsuspecting purchasers, each of whom paid an unsupported premium for a deceptively labeled "LED TV," and on whose behalf Plaintiffs bring this action to recover such premium and for other appropriate relief.

## PARTIES

7.      Plaintiff Brandon Martinez is a citizen of Idaho, and, while residing in New Mexico, purchased a Toshiba-brand 50L2200U model "LED TV" for personal use and not for resale.

8.      Plaintiff Jeff Pile is a citizen of Florida, and purchased a Toshiba-brand 47TL515U model "LED TV" for personal use and not for resale.

9.      Plaintiff Diana Rodriguez is a citizen of New Jersey, and purchased a Toshiba-brand 55SL417U model "LED TV" for personal use and not for resale.

10.     When Plaintiffs were considering purchasing these televisions, there were three flat panel television options widely advertised in the market at large – "Plasma TVs," "LCD TVs" and "LED TVs."  Plaintiffs considered models that were advertised as "LED TVs" as well as models that were advertised as "LCD TVs." Plaintiffs selected a Toshiba "LED TV" model, even though it was priced higher than comparable model "LCD TVs" offered for sale, because of Toshiba's marketing assertions on the carton containing the television that it was an "LED TV," as opposed to an "LCD TV."

11.     TAIS is a California corporation with its principal place of business located in Irvine, California.  TAIS has distributed and marketed and directed the marketing of so-called "LED TVs" within this district, the State of California, and throughout the United States.  Upon information and belief, TAIS's deceptive marketing and advertising practices described herein originated out of its principal place of business in California.

12.     Toshiba Corporation is a Japanese corporation with its principal place of business located in Tokyo, Japan.  Toshiba Corporation distributes and markets, and directs and oversees the marketing of, so-called "LED TVs" within this district, the State of California, and throughout the United States.  Additionally, Toshiba Corporation has licensed the ability to market and sell Toshiba-branded televisions in the U.S. to a Taiwanese firm named Compal Electronics.  Upon information and belief, Toshiba Corporation has continued, and will still continue to, oversee the distribution and marketing of Toshiba-branded televisions in the U.S., including so-called "LED" TVs.

13.     TLSC is a Japanese corporation with its principal place of business located in Tokyo, Japan.  Upon information and belief, TLSC is a subsidiary of Toshiba Corporation.  Upon information and belief, TLSC distributes and markets, and will continue to distribute and market or cause to be distributed and marketed, so-called "LED TVs" within this district, the State of California, and throughout the

United States.  Upon information and belief, TLSC is an entity that, on behalf of Toshiba Corporation, has contracted with the Taiwanese firm named Compal Electronics to market and sell Toshiba-branded televisions in the U.S.  Upon information and belief, TLSC, on behalf of Toshiba Corporation, will continue to oversee and/or cause the distribution and marketing of Toshiba-branded televisions in the U.S., including so-called "LED" TVs.

## STATEMENT OF FACTS

### TELEVISION OWNERSHIP AND SALES STATISTICS

14.     Televisions are ubiquitous in our society.  The Nielsen Company, a world-renowned expert in the field of television viewership, reported in 2012 that 97.1% of all U.S. households owned a television, and 84.4% owned more than one.  According to the same report, in 2012, U.S. households were more likely to own a television than a cell phone (87.3%), DVD player (86.7%), or personal computer (80.9%).

15.     While the TV household penetration rate in the U.S. has been high for decades – exceeding 90% since 1965 – rapid advances in display technology (including the introduction of so-called flat panel televisions), the dramatic expansion of non-broadcast "cable" and "satellite" channels and providers, price competition, and the Congressional mandate that all full power television broadcasters (like ABC, NBC, and CBS) broadcast exclusively in digital format starting on June 13, 2009, have led many, and perhaps most, U.S. households to purchase at least one television, and often several units, within the past few years alone.

16.     Industry statistics bear out this phenomenon.  In February 2008, 25.1% of all U.S. households were HD Display Capable – meaning that they were "equipped with an HD television that [was] capable of displaying HD content." (HD or high definition content refers to the resolution of the screen image.  HDTVs

produce a resolution or level of detail that is much greater than standard definition televisions.)  By May 2012, however, the number of U.S. households that were HD Display Capable had increased to 75.5%.  Non-HD televisions cannot be converted into HD televisions.  In order for the penetration rate to have tripled, 50% of all U.S. households (or approximately 57,000,000 households based on U.S. Bureau of Statistics figures) had to buy at least one new television unit in that approximately 4-year period.

      17.    Industry statistics show:

           a)    In 2009, television manufacturers shipped over 35,300,000 "flat panel" (Plasma or LCD) television units for sale in the United States.

           b)    In 2010, television manufacturers shipped over 38,600,000 "flat panel" (Plasma or LCD) television units for sale in the United States.

           c)    In 2011, television manufacturers shipped almost 40,000,000 "flat panel" (Plasma or LCD) television units for sale in the United States.

           d)    In 2012, television manufacturers shipped over 37,600,000 "flat panel" (Plasma or LCD) television units for sale in the United States.
Total revenue from 2012 sales exceeded $28 billion.

           e)    While final figures were not yet accessible as of filing, in 2013, television manufacturers were forecast to ship over 36,600,000 "flat panel" (Plasma or LCD) television units for sale in the

United States.  Total revenue from 2013 sales was projected to exceed $28 billion.

18.    As the following industry chart makes clear, globally, LCD TVs comprise the overwhelming majority of flat panel sales, and LED-lit LCD TVs now comprise the overwhelming majority of "LCD TV" sales:



19.    Although LED-lit LCD TVs were introduced to the mass market in or about 2008, this technology has quickly come to dominate U.S. LCD TV unit sales, as the following statistics demonstrate:

a)    In 2009, approximately 3% of all LCD TV units sold in the US (volume, not dollar value), used LED backlighting.

b)    In 2010, approximately 22% of all LCD TV units sold in the US (volume, not dollar value), used LED backlighting.

c)    In 2011, approximately 45% of all LCD TV units sold in the US (volume, not dollar value), used LED backlighting.

d)    In 2012, approximately 51% of all LCD TV units sold in the US (volume, not dollar value), used LED backlighting.

e)    In 2013, approximately 84% of all LCD TV units sold in the US (volume, not dollar value), were projected to use LED backlighting.

### TOSHIBA'S MARKET SHARE

20.    Toshiba is a world-renown electronics manufacturer and a significant player in the U.S. television market.  In the time period 2009 to 2013, and variable by quarter, Toshiba's market share in the U.S. LCD TV segment has fluctuated from about 5% to about 8%.

21.    Toshiba's acquisition and maintenance of its share of the U.S. television market for LCD TVs is due, in part, to the false advertising described herein.

### TELEVISION DISPLAY TECHNOLOGIES

#### CRT Televisions and Analog Rear Projection Televisions

22.    From virtually its earliest beginnings until the late 1990s, direct view CRT-technology (cathode ray tubes) dominated the United States television market. These were the boxy televisions of old, and were sold to consumers in a variety of screen sizes, up to a maximum of 37" (measured diagonally).

23.    In a cathode ray tube television, a filament is placed inside a vacuum glass tube.  When the filament (cathode) is activated by electricity, it generates electrons, which fall off the heated filament into the vacuum.  A focusing anode attracts the electrons and focuses them into a tight beam or "ray," which is then accelerated.  The tight, now high-speed electrons travel through the vacuum in the tube and strike the flat glass screen at the other end of the tube – which is the back

of the television's outward facing screen.  The back of the screen is coated with phosphor, which glows when struck by the electron beam.

24.     A phosphor is any material that, when exposed to radiation (like the electron beam), emits visible light.  In a black and white CRT TV, there is one phosphor that glows white when struck.  In a color screen, there are three phosphors arranged as dots or stripes, so as to emit red, green, and blue light when struck by the ray.

25.     CRT TVs were for decades the only televisions consumers could purchase.

26.     Exemplar images of CRT televisions follow:

  

27.     CRT TVs, moreover, have a built in size limitation.  The size of the screen is proportional to the size of the vacuum tube.  To increase the screen size, one must increase the length of the vacuum tube.  As a result, CRT TVs for the consumer market were generally only available in sizes up to 37" diagonal.

28.     Consumers who wanted a larger screen image were forced to purchase analog projection televisions.  Analog projection televisions of this era also used vacuum tube technology to generate the screen image.

29.     Exemplar images of analog projection televisions follow:

**COMPLAINT**



1
2
3
4
5
6
7
8
9
10

11                                Plasma Televisions

12          30.     In or about the early 2000s, television manufacturers began introducing

13   flat panel, plasma display televisions ("Plasma TVs") to the mainstream consumer

14   market.  The introduction of Plasma TVs, which were thin and light enough to be

15   mounted directly on a wall, revolutionized the television industry.

16          31.     Plasma TVs use plasma displays, which are composed of millions of

17   small cells, or pixels, containing electrically charged ionized gases, to generate the

18   screen image.  When the television is turned off, the ions and electrons in the gas or

19   "plasma" are equally balanced, the atom is stable, and the pixel is dark.  When

20   electricity is introduced, however, the atoms become unstable and electrons and

21   particles within the plasma begin to collide, releasing photons of ultraviolet energy.

22          32.     Each pixel within the plasma display is made up of three separate

23   subpixel cells with different colored phosphors – one red, one blue, and one green.

24   As discussed above, in the context of CRT TVs, phosphors produce light photons –

25   they glow – when struck by energy.  The phosphors in the Plasma TVs are activated

26   by the ultraviolet photons, which can be varied in number by pixel and subpixel.

27   The amount of electricity applied to the subpixel determines the number of

28   ultraviolet photons generated, and thus the color intensity the subpixel generates,

which combines with the primary colors generated by the other two subpixels to determine the color displayed on the screen by the pixel. All of the pixels acting together generate the screen image. Exemplar graphical depictions of the image generating process for a plasma display are set forth below:



Schematic illustration of single cell/pixel in PDP

33.     The pixels used in plasma displays do not require a separate light source; the image and all of the colors are generated by the interaction between the electrically charged ionized gases and the phosphor in the cells.

34.     A generic image of a Plasma TV is set forth below:



1

2

3

4                               <u>LCD Televisions</u>

5           35.     In the early to mid-2000s, television manufacturers began introducing

6    flat panel, liquid crystal display televisions ("LCD TVs") to compete with Plasma

7    TVs (and to a lesser degree other available alternative technologies, e.g., CRT).

8    While flat, reasonably light, and wall-mountable like Plasma TVs, LCD TVs utilize

9    a fundamentally different display technology – liquid crystal displays ("LCD").

10          36.     To form a liquid crystal display or LCD, a very thin layer of a liquid

11   crystalline substance is sandwiched between two substrates, which are sheets of

12   glass or plastic to which a grid of electrodes has been applied.  A vertical polarizing

13   film is applied to the LCD's rear substrate.  Patterned red, green and blue color

14   filters and a horizontal polarizing film are applied to the front substrate.  The liquid

15   crystals are rod-shaped polymers that are neither solid nor liquid and, when subject

16   to an electric current, will align in a predictable manner.  In an LCD TV, the liquid

17   crystal display (or LCD) is then lit by a separate source of light (the "light source")

18   because, unlike plasma displays, liquid crystals do not emit light themselves.

19          37.     An LCD TV generates screen images by controlling the amount of light

20   from the light source that passes through the LCD and strikes the color filters.  In

21   very simple terms, the LCD is comprised of millions of tiny liquid crystal "shutters"

22   that allow or block the passage of light depending on the intensity of the electric

23   current being applied.  Each of these liquid crystal "shutters" corresponds to a tiny

24   rectangular red, green, or blue filter or sub-pixel that is mounted to the front

25   substrate (the surface closest to the television's glass screen).  As with plasma

26   displays, three sub-pixels – one red, one green, and one blue – comprise a single

27   pixel, and a "Full HD" or high definition television will contain more than 2 million

28   pixels (1920 pixels horizontally multiplied by 1080 pixels vertically).  The amount

**COMPLAINT**

of light that passes through each liquid crystal "shutter" determines the intensity of the red, green, or blue color that the corresponding subpixel generates.  The interaction of the trio of subpixels (for each pixel) determines the color that is displayed on the screen for that pixel.  All of the pixels together generate the screen image.  Exemplar graphical depictions of the image generating process for a liquid crystal display are set forth below:



38.    LCD technology is light source neutral:  *i.e*., **any** white light source can be used to light and thus generate the screen image, a fact that has been widely known throughout the manufacturing industry since the introduction of this technology.

39.    Initially, and for quite a number of years, all manufacturers of LCD TVs primarily used cold cathode fluorescent lights (CCFLs) as the source light.  A picture of a generic CCFL light source of the type used in LCD TVs follows:



1

2

3

4       40.    Television manufacturers, however, continued to experiment with and

5 market LCD TVs with other light sources, including LEDs, throughout this period.

6 For example, in 2004, Sony introduced the Sony Qualia 005. The Sony Qualia 005

7 used an array of light emitting diodes to illuminate the LCD panel. The introduction

8 of a different light source did **not** change the manner in which LCD panels and LCD

9 TVs generate the screen image described above. A picture of a generic LED light

10 source of the type used in LED-lit LCD TVs follows:

11



12

13

14

15

16

17

18

19

20       41.    Soon after their introduction, LED-lit LCD TVs proliferated, with

21 multiple manufacturers using light emitting diodes, instead of CCFLs, to the light

22 the liquid crystal display. Some of these devices place the LEDs behind the liquid

23 crystal display (back- or direct-lit), while others place the LEDs on the edge of the

24 liquid crystal display (edge lit). But all of these televisions—regardless of the light

25 source—employ a liquid crystal display of LCD screen to generate the TV picture.

26       42.    Toshiba introduced its first LCD TVs with an LED light source in the

27 Summer of 2009 (i.e., the Regza SV670), and followed with additional models and

28 generations of LED-lit LCD TVs generation series in subsequent years. Initially,

1  LED-lit LCD TVs represented only a small fraction of Toshiba's total LCD TV and

2  other flat panel sales, whereas, at the time of the filing of this complaint, all of the

3  TVs listed on Toshiba's U.S. website are LED-lit LCD TVs.

4

5                    **MARKETING OF LCD TELEVISIONS**

6          43.    When liquid crystal display televisions were first introduced into the

7  market, the televisions were universally marketed as "LCD TVs," just as plasma

8  display televisions had been advertised as Plasma TVs.  No effort was made to

9  advertise or designate this product line in reference to the CCFL or other light

10 source used to light the LCD panel.  For example, the Sony Qualia was not

11 advertised as an LED TV, nor were comparable liquid crystal displays using CCFL

12 backlights advertised as CCFL TVs.  This remained true even as LED-lit LCD TVs

13 became cheaper to manufacture and more common in the consumer segment of the

14 market.

15         44.    Toshiba's initial LED-lit LCD TV units were likewise clearly identified

16 as LCD TVs as the following marketing materials and owner's manual for the

17 Regza SV670 model demonstrate:

18

19

20

21

22                    

23

24

25

26

27

28

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**COMPLAINT**

45.     Introduction of LED-lit LCD TVs did not result in the immediate end of CCFL-lit LCD TVs.  To the contrary, LED-lit LCD TVs did not sell well.  Because LED-lit LCD TVs were priced higher than comparable CCFL-lit LCD TVs, consumers continued to purchase CCFL-lit LCD TVs (or Plasma TVs) notwithstanding the alleged benefits of the LED backlighting which Toshiba and other manufacturers trumpeted.

46.     Manufacturers, including Toshiba, continued to manufacture both CCFL and LED-lit LCD TVs, advertising and selling them side by side through the same retail and on-line channels.  While the LED lighting feature was often advertised, at least initially, no effort was made to conceal that these televisions utilized liquid crystal displays and were therefore in fact LCD TVs.  Most early advertising, like the Toshiba materials quoted above, clearly stated that the televisions were LED-lit LCD TVs or otherwise accurately described and disclosed that the television being advertised utilized LCD display technology.  As noted, very few consumers were interested enough to purchase the product, notwithstanding the LED light source.

47.     Within months after it began distributing LED-lit LCD TVs, Toshiba made the marketing decision that gives rise to this lawsuit:  Toshiba dropped all references to the televisions being LCD TVs and began marketing the LED-lit LCD TVs as a new, advanced, technologically superior species of television, a so called LED TV, which was allegedly different from and better than LCD TVs, even though both species of television use the same liquid crystal displays to generate the same screen image.  The marketing materials and manual below reflect this shift to false and misleading marketing and labeling:



16

COMPLAINT



**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



18

1
2
3
4
5
6
7
8
9
10
11
12
13



14      48.     Toshiba's cartons also now prominently referred to the televisions as

15 "LED TVs"; nowhere on the carton did Toshiba say the televisions were "LCD

16 TVs" that used an LED light source or anything similar.  Images of such cartons

17 appear below:

18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12



13

14

15

16

17

18

19

20

21

22

23

24

25

26



27        49.     The result of this deception was both immediate and dramatic:  A

28   product that had previously failed to make any significant inroads into the flat panel

television market suddenly became the leader of the industry.  Before the false advertising at issue, CCFL-lit LCD TVs had dominated LCD TV sales in the U.S. with over 97% of sales.  Today, however, as a result of the deceptive advertising, LED-lit LCD TVs now dominate the LCD TV market as well as the overall flat panel television market.

50.     LED-lit LCD TVs are **not** in fact LED TVs.  Although Toshiba has falsely advertised LED-lit LCD TVs as "LED TVs" in a successful effort to increase sales and profits, the fundamental display technology of its flat screen televisions has not changed.  All of these televisions use LCD screens to display their pictures.  These televisions were LCD TVs before Toshiba's false advertising and remain LCD TVs today.  While a few manufacturers have refrained from falsely advertising their televisions as LED TVs, the majority of manufacturers, including Toshiba, have chosen falsely to advertise their LED-lit LCD TVs as "LED TVs" (or have used similarly deceptive language – *e.g.*, LED HDTV).

51.     The manufacturers that have refrained from this deception, including Sony, RCA, and Hitachi, have seen their market shares fall, while those manufacturers that have engaged in the deception, including Toshiba, have reaped the benefits of increased sales.

52.     Toshiba uses multiple marketing channels to create the appearance of a product category and price point that simply does not exist in the consumer market.  For example, for years, when visiting Toshiba's website, customers were directed to choose between LED TVs, LCD TVs, and Plasma TVs.[1]  A screenshot of Toshiba's website as of January 2, 2012 below illustrates this point:

---

[1] Toshiba has discontinued distributing CCFL-lit LCD TVs, although some remain for sale through third party retailers.  As a result, Toshiba's web interface has been updated to eliminate the LCD category altogether.

1

2

3

4

5

6

7

8

9

10



11 The LCD category accurately describe the applicable display technology, while the

12 LED category misleadingly identifies only the light source, thus falsely implying

13 that LED, not LCD, is the display technology.  Moreover, when potential purchasers

14 click through to the actual televisions, for the LED TVs there is no reference to their

15 being LCD display televisions.  This is deceptive.

16        53.    Toshiba has used circulars, newspaper and magazine advertisements,

17 and point of sale display materials to further its deception.

18        54.    In the absence of Toshiba's deceptive advertising, Plaintiffs and other

19 consumers would instead have purchased a comparable model CCFL LCD TV from

20 Toshiba or another manufacturer at a lower price, or would have paid less for the

21 falsely marketed and advertised "LED TV" models that they purchased from

22 Toshiba.

23        55.    Toshiba is fully aware that the televisions at issue are LED-lit LCD

24 TVs, that they do not contain LED displays, and that they are not LED TVs.

25 Toshiba has falsely advertised the televisions to increase sales and profits.  Toshiba

26 would not have been able to charge the premium it has charged for its "LED TVs" if

27 it had accurately advertised the televisions as LCD TVs or LED-lit LCD TVs.

28

## LED-LIT LCD TVS ARE NOT LED TVS

56.     LED-lit LCD TVs are not LED TVs, which employ a fundamentally different technology that is still several years away from availability at prices accessible to mainstream purchasers.  Actual LED TVs use light emitting diode displays instead of the liquid crystal displays or plasma displays described above.  The LED displays in these televisions are self-illuminating; they require **no** independent light source and do **not** contain liquid crystal technology.  Actual LED TVs are currently available for sale, but at prices that only the wealthy can afford; the televisions are far out of the reach of mainstream consumers.

57.     Toshiba does not appear to market a true LED TV, but other manufacturers do.  For example, Samsung's 55" true LED TV, model KN55S9C, retailed for $8,999.  A similarly sized Samsung LED-lit LCD TV sells for as low as $799 – less than one-tenth the price.  A similarly sized Toshiba LED-lit LCD TV sells for as low as $1049.

58.     As shown, while LED-lit LCD TVs are not LED TVs, various manufacturers, including Toshiba, have deliberately and falsely claimed that such televisions are LED TVs in order to generate sales and charge a price premium for such televisions.

59.     Commentators have noted the deceptive nature of this marketing and labeling.  For example (all emphasis added):

- **They are not LED TVs.**  Calling them such makes as much sense as calling its existing line of LCD televisions Cold Cathode Fluorescent Lamp TVs, or CCFL TVs, after the lighting technology that they use….[The] decision to drop 'LCD' was a smart marketing move….But it's also confusing consumers."

- **There is no such thing as an LED TV.**  The misleading marketing on this one really annoys me.  All 'LED TVs' are just LCD TVs that use LEDs as their light source."

- "There has been a **lot of hype and confusion** surrounding the introduction of 'LED' Televisions….LED TVs are still LCD TVs.  It is just that these new sets use LED backlights rather than the fluorescent-type backlights used in most other LCD TVs.  In other words, LED TVs should actually be labeled LCD/LED or LED/LCD TVs."

**LED-lit LCD TVs Are Not Inherently Superior to CCFL-lit LCD TVs**

60.     There is nothing about LED-lit LCD TVs that renders them inherently superior (or inferior) to CCFL-lit LCD TVs.  The image that is generated on the television screen is a function of multiple design elements working together, including the quality and specifications (e.g., lumens output; transmissivity) of the LCD polarizers and color filters, light bulb, glass screen, circuitry, etc.  The result is a plethora of output specifications (e.g., contrast, refresh rate, color space), which can vary by make and model, but which are not dictated by the mere fact that one television is lit by a CCFL array while the other is lit by LEDs.  CCFL-lit LCD TVs can perform similarly and better than LED-lit TVs, generating equal or greater luminance, equal or better contrast ratio, and equal or better color space coordinates, among other output specifications.

**PRICE PREMIUM**

61.     Toshiba's deceptive marketing practices have allowed it to charge a premium for the LED-lit LCD TVs that it has misrepresented as LED TVs.  While the exact price premium varies by TV size (and other features), and has varied over time, at all times Toshiba's LED-lit LCD TVs have been priced higher than otherwise comparable CCFL-lit LCD TVs.

24
**COMPLAINT**

1   **PLAINTIFFS AND THE PROPOSED CLASSES WERE DECEIVED AND**
2   **INJURED**

3        62.    Plaintiffs and other purchasers of these "LED TVs" were misled into

4   believing that they were purchasing an LED TV, not the LCD TV they actually

5   received, and have suffered damage as a result, in the form of the premium they

6   were deceived into paying.  Plaintiffs and the proposed class members had no

7   knowledge that the televisions were in fact LCD TVs, and did not suspect, nor did

8   they have reason to suspect, that the televisions they were purchasing had been

9   falsely and deceptively advertised.

10

11                          **PLAINTIFFS' RELIANCE AND INJURY**

12       63.    Plaintiffs relied upon Toshiba's false and deceptive representation that

13  the television they purchased was an LED TV – which was prominently displayed

14  on the television's carton at the time of purchase.  Plaintiffs believed that they were

15  purchasing an LED TV, not the LCD TV that they actually received.  Plaintiffs

16  would not have purchased or would have paid less for their televisions had the

17  televisions not been falsely and deceptively advertised or had they known the truth.

18

19                              **<u>CLASS ALLEGATIONS</u>**

20       64.    This action has been brought, and may be properly maintained, under

21  Federal Rules of Civil Procedure 23(a) (1)-(4) and 23 (b) (2) and (3).

22       65.    Plaintiffs bring this action on behalf of themselves and all other

23  members of a class (the "Nationwide Class") defined as follows:

24              All persons who purchased, for personal use and not re-
                sale, within the United States within the four years (or
25              other applicable statute of limitations period) preceding
                the filing of this Complaint up through any trial of this
26              matter, a Toshiba-brand LED-lit LCD television that is
                sold in a box that describes the television as an LED TV or
27              LED HDTV or LED television.

28

Excluded from the Nationwide Class are Toshiba, and any person or entity related to or affiliated with Toshiba, and any business, person, or entity that purchased such televisions for re-sale (*e.g.*, retailers), any judicial officer assigned to the case, the court staff and jurors, along with their immediate families.

66. Alternatively or in addition, Plaintiff Brandon Martinez brings this action on behalf of himself and all other members of a New Mexico class (the "New Mexico Subclass") defined as follows:

All persons who purchased, for personal use and not re-sale, within the State of New Mexico within the four years (or other applicable statute of limitations period) preceding the filing of this Complaint up through any trial of this matter, a Toshiba-brand LED-lit LCD television sold in a box that describes the television as an LED TV, an LED HDTV or an LED television.

Excluded from the New Mexico Subclass are Toshiba, and any person or entity related to or affiliated with Toshiba, and any business, person, or entity that purchased such televisions for re-sale (*e.g.*, retailers), any judicial officer assigned to the case, the court staff and jurors, along with their immediate families.

67. Alternatively or in addition, Plaintiff Jeff Pile brings this action on behalf of himself and all other members of a Florida class (the "Florida Subclass") defined as follows:

All persons who purchased, for personal use and not re-sale, within the State of Florida within the four years (or other applicable statute of limitations period) preceding the filing of this Complaint up through any trial of this matter, a Toshiba-brand LED-lit LCD television that is sold in a box that describes the television as an LED TV or LED HDTV or LED television.

Excluded from the Florida Subclass are Toshiba, and any person or entity related to or affiliated with Toshiba, and any business, person, or entity that purchased such televisions for re-sale (*e.g.*, retailers), any judicial officer assigned to the case, the court staff and jurors, along with their immediate families.

**COMPLAINT**

68.     Alternatively or in addition, Plaintiff Diana Rodriguez brings this action on behalf of herself and all other members of a New Jersey class (the "New Jersey Subclass") defined as follows:

> All persons who purchased, for personal use and not re-sale, within the State of New Jersey within the four years (or other applicable statute of limitations period) preceding the filing of this Complaint up through any trial of this matter, a Toshiba-brand LED-lit LCD television that is sold in a box that describes the television as an LED TV or LED HDTV or LED television.

> Excluded from the New Jersey Subclass are Toshiba, and any person or entity related to or affiliated with Toshiba, and any business, person, or entity that purchased such televisions for re-sale (*e.g.*, retailers), any judicial officer assigned to the case, the court staff and jurors, along with their immediate families.

69.     Each proposed class and subclass is composed of at least thousands of persons and is sufficiently numerous for class treatment.  Joinder of class members individually would be impracticable, and the resolution of the class claims in a single action will provide substantial benefits to the parties and the Court.

70.     Plaintiffs' claims are typical of the claims of each proposed class or subclass member that Plaintiffs (whether collectively or respectively) seek to represent, and Plaintiffs have no interests that are adverse to the interests of the members of each proposed class or subclass they, or he or she, respectively, seeks to represent.

71.     This dispute raises fundamental questions of law and fact that are common to all of the proposed class or subclass members, and that predominate over any individual class or subclass member issues that must be resolved to adjudicate this claim, including, but not limited to:

(a)     Whether Toshiba marketed and advertised LED-lit LCD TVs as LED TVs;

(b)     Whether Toshiba intended to mislead the proposed classes when it marketed and advertised LED-lit LCD TVs as LED TVs; and

1    (c)    Whether it is false or misleading to describe an LED-lit LCD

2    television as an LED TV.

3    72.    Plaintiffs will fairly and adequately protect the interests of each

4 proposed class and subclass that Plaintiffs (whether collectively or respectively)

5 seek to represent.

6    73.    Plaintiffs have retained experienced, qualified counsel to represent each

7 proposed class and subclass that Plaintiffs (whether collectively or respectively)

8 seek to represent.

9    74.    A class action is superior to other available methods for the fair and

10 efficient adjudication of this controversy since joinder of all of the class members is

11 impracticable.  Even if Plaintiffs and the other class or subclass members could

12 afford individual litigation, the courts could not.  The amount at stake for each class

13 or subclass member is such that individual litigation would be inefficient and cost

14 prohibitive.  Additionally, the adjudication of this controversy through a class action

15 will avoid the possibility of inconsistent and potentially conflicting adjudications of

16 the claims asserted herein.  There will be no difficulty in the management of this

17 action as a class action.

18    75.    This action is certifiable in the alternative under the provisions of Fed.

19 R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds

20 generally applicable to the class members, thereby making appropriate final

21 injunctive relief or corresponding declaratory relief with respect to the class

22 members as a whole and necessitating that any such relief be extended to the class

23 members on a mandatory, class-wide basis.

24

**FIRST CAUSE OF ACTION**
25 **Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, By Plaintiffs Individually And On Behalf Of The Nationwide**
26 **Class Against Defendants TAIS, Toshiba Corporation, and TLSC**

27    76.    Plaintiffs incorporate by reference and re-allege each allegation set

28 forth in paragraphs 1-75 hereinabove.

77.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class.

78.   The acts and practices engaged in by Toshiba, and described herein, constitute unfair, unlawful, and/or fraudulent business practices in that Toshiba marketed the televisions as LED TVs when they were in fact LCD TVs:

    (a)   Toshiba's practices, as described herein, constitute false and deceptive conduct;

    (b)   the justification for Toshiba's conduct is outweighed by the gravity of the consequences to Plaintiffs and the Nationwide Class members;

    (c)   Toshiba's conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiffs and the Nationwide Class members; and/or

    (d)   Toshiba's conduct constitutes fraudulent, untrue or misleading actions in that such conduct has a tendency to deceive a reasonable person, including Plaintiffs and the Nationwide Class members.

79.   Toshiba's false and misleading advertising was disseminated to increase sales and to increase the amount of money that Toshiba could charge for each television that was sold.

80.   Toshiba knew or should have known that their advertisements were false and misleading.

81.   Plaintiffs and the Nationwide Class have suffered harm as a result of these violations because, without limitation, they were misled into believing that they were buying an LED TV, not an LCD TV, and paid a monetary premium for these televisions that they otherwise would not have paid had the televisions been described accurately.  Plaintiffs and the Nationwide Class have suffered injury in

fact and have lost money or property as a result of Toshiba's unfair competition, as alleged herein.

82.     By reason of Toshiba's violation of Cal. Bus. & Prof. Code § 17200, et seq., Plaintiffs and the Nationwide Class are entitled to recover restitution, injunctive relief, and such other relief as provided by law.

### SECOND CAUSE OF ACTION
**Violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, By Plaintiffs Individually And On Behalf Of The Nationwide Class Against Defendants TAIS, Toshiba Corporation, and TLSC**

83.     Plaintiffs incorporate by reference and re-allege each allegation set forth in paragraphs 1-75 hereinabove.

84.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class.

85.     Toshiba falsely marketed the televisions as LED TVs when they were in fact LCD TVs.  Toshiba did this to increase sales and to increase the amount of money that Toshiba could charge for each television that was sold.

86.     Toshiba was aware at all relevant times that its advertising claims were false and misleading.

87.     Plaintiffs and the Nationwide Class have suffered harm as a result of these violations because they were misled into believing that they were buying an LED TV, not an LCD TV, and paid a monetary premium for these televisions that they otherwise would not have paid had the televisions been described accurately. Plaintiffs and the Nationwide Class have suffered injury in fact and have lost money or property as a result of Toshiba's false advertising, as alleged herein.

88.     By reason of Toshiba's violation of Cal. Bus. & Prof. Code § 17500, et seq., Plaintiffs and the Nationwide Class are entitled to recover restitution, injunctive relief, and such other relief as provided by law.

**THIRD CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act,**
**Cal. Civil Code §§ 1750 *et seq.*, By Plaintiffs Individually And On Behalf Of**
**The Nationwide Class Against Defendants TAIS, Toshiba Corporation, and**
**TLSC**

89.    Plaintiffs incorporate by reference and re-allege each allegation set forth in paragraphs 1-75 hereinabove.

90.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class.

91.    In connection with the sale of goods to consumers, Toshiba:

(a)    represented and represents "that goods…have characteristics…which they do not have" in violation of Cal. Civ. Code § 1770(a)(5);

(b)    represented and represents "that goods…are of a particular style or model" when they are actually of a different "style or model" in violation of Cal. Civ. Code § 1770(a)(7); and

(c)    advertised and advertises "goods…with intent not to sell them as advertised" in violation of Cal. Civ. Code § 1770(a)(9).

92.    Toshiba violated these provisions by representing that televisions were LED TVs when they were in fact LCD TVs.  Plaintiffs and the Nationwide Class have suffered harm as a result of these violations because they were misled into believing that they were buying an LED TV, not an LCD TV, and paid a monetary premium for these televisions that they otherwise would not have paid had the televisions been described accurately and represented truthfully.

93.    Plaintiffs and the Nationwide Class, by this cause of action, seek injunctive relief only.  Concurrently with the filing of this Complaint, a CLRA notice letter will be served on Toshiba advising Toshiba that it has violated, and continues to violate, the Consumer Legal Remedies Act.  Via this letter, Plaintiffs will advise Toshiba that it must correct, repair, replace, or otherwise rectify the

1  conduct alleged herein to be in violation of the Consumer Legal Remedies Act, and

2  that if it failed to respond to this demand and to take full remedial action (including

3  by making full restitution) within thirty days of receipt of the Notice, Plaintiffs will

4  amend this Complaint to request restitution, damages, actual damages, and punitive

5  damages.  Assuming Toshiba declines to remedy this wrong or cease its deceptive

6  and unlawful practices as alleged herein, within thirty days, Plaintiffs intend to

7  amend this Complaint to seek compensatory and punitive damages on behalf of

8  themselves and the nationwide class.

9

10  **FOURTH CAUSE OF ACTION**
**Violation of New Mexico Unfair Trade Practices Act,**

11  **N.M. Stat. Ann. §§ 57-12-1 *et. seq.*, By Plaintiff Martinez Individually And On**
**Behalf Of The New Mexico Subclass Against Defendants TAIS, Toshiba**

12  **Corporation, and TLSC**

13

14  94.     Plaintiff Brandon Martinez incorporates by reference and re-alleges

15  each allegation set forth in paragraphs 1-75 hereinabove.

16  95.     Plaintiff Martinez brings this claim on behalf of himself and the New

17  Mexico Subclass.

18  96.     Plaintiff Martinez and the members of the New Mexico Subclass are

19  consumers under New Mexico Stat. Ann. §§ 57-12-1 *et. seq.*

20  97.     Toshiba has engaged in deceptive practices related to the sale of its

21  LED-lit LCD TVs by falsely labeling and marketing them as LED TVs.

22  98.     Toshiba's deceptive acts and practices were directed at consumers and

23  were otherwise consumer oriented.

24  99.     Toshiba's false and misleading advertising was disseminated to

25  increase sales and to increase the amount of money that Toshiba could charge for

26  each television that was sold.

27  100.     Toshiba knew or should have known that its advertisements and

28  labeling were false and misleading.

32
**COMPLAINT**

101.   Toshiba's unconscionable conduct alleged herein included the omission and concealment of material facts and misrepresentations concerning its LED-lit LCD TVs.

102.   Toshiba was in a superior position to know, and actually did know, the true facts about its LED-lit LCD TVs at the time of the sale.

103.   Toshiba intended that Plaintiff Martinez and members of the New Mexico Subclass rely on the acts of concealment, omissions, and misrepresentations regarding the nature of LED-lit LCD TVs, so that Plaintiff Martinez and members of the New Mexico Subclass would purchase said televisions.

104.   If Toshiba had been truthful about the nature of and disclosed all the material information regarding the LED-lit LCD TVs sold to Plaintiff Martinez and members of the New Mexico Subclass, they would not have purchased said televisions, or would have paid less for them.

105.   Toshiba's deceptive acts and practices were committed in conduct of business, trade, or commerce in the state of New Mexico.  Toshiba's conduct was not a unique, one-time occurrence without possibility of replication or recurrence and without implication for the broader consuming public.  To the contrary, the deceptive conduct set forth herein is part of a regular and recurring practice that impacts all of the New Mexico Subclass members.

106.   Plaintiff Martinez and the New Mexico Subclass have suffered harm as a result of these violations because they were misled into believing that they were buying an LED TV, not an LCD TV, and paid a monetary premium for these televisions that they otherwise would not have paid had the televisions been described accurately.  Plaintiff Martinez and the New Mexico Subclass have suffered injury in fact and have lost money or property as a result of Toshiba's deception, as alleged herein.

107.   By reason of Toshiba's violation of New Mexico Stat. Ann. §§ 57-12-1 *et. seq.*, Plaintiff Martinez and each member of the New Mexico Subclass are

entitled to recover damages, injunctive relief and their costs and attorneys' fees in filing and prosecuting this action, and such other relief as provided by law.

**FIFTH CAUSE OF ACTION**
**Violation of New Mexico's False Advertising Law, N.M. Stat. Ann. §§ 57-15-1**
***et. seq.* (False Advertising), By Plaintiff Martinez Individually And**
**On Behalf Of The New Mexico Subclass Against Defendants TAIS,**
**Toshiba Corporation, and TLSC**

108.   Plaintiff Brandon Martinez incorporates by reference and re-alleges each allegation set forth in paragraphs 1-75 hereinabove.

109.   Plaintiff Martinez brings this claim on behalf of himself and the New Mexico Subclass.

110.   Toshiba falsely advertised and labeled its LED-lit LCD TVs as LED TVs when they were in fact LCD TVs.  Toshiba did this to increase sales and to increase the amount of money that Toshiba could charge for each television that was sold.

111.   Toshiba was aware at all relevant times that its advertising and labels were false and misleading.

112.   Toshiba's conduct was not a unique, one-time occurrence without possibility of replication or recurrence and without implication for the broader consuming public.  To the contrary, the false advertising and labelling described herein is part of a regular and recurring practice that impacts all of the New Mexico Subclass members.

113.   Plaintiff Martinez and the New Mexico Subclass have suffered harm as a result of these violations because they were misled into believing that they were buying an LED TV, not an LCD TV, and paid a monetary premium for these televisions that they otherwise would not have paid had the televisions been described accurately.  Plaintiff Martinez and the New Mexico Subclass have

suffered injury in fact and have lost money or property as a result of Toshiba's false advertising and labeling, as alleged herein.

114.   Plaintiff Martinez and the New Mexico Subclass are informed and believe and on that basis allege that Toshiba acted willfully or knowingly in falsely advertising and labelling it LED-lit LCD TVs.

115.   By reason of Toshiba's aforesaid violations of New Mexico's False Advertising Law, New Mexico Stat. Ann. §§ 57-15-1 *et seq.*, Plaintiff Martinez and each member of the New Mexico Subclass are entitled to recover damages, injunctive relief and their costs and attorneys' fees in filing and prosecuting this action and such other relief as provided by law.

## SIXTH CAUSE OF ACTION
**Violation Of Florida Deceptive And Unfair Trade Practices Act, F.S.A., 501.201 *et seq.* (the "FDUTPA"), By Plaintiff Pile Individually And On Behalf Of The Florida Subclass Against Defendants TAIS, Toshiba Corporation, and TLSC**

116.   Plaintiff Pile incorporates by reference and re-alleges each allegation set forth in paragraphs 1-75 hereinabove.

117.   Plaintiff Pile brings this claim on behalf of himself and the Florida Subclass.

118.   At all relevant times, Plaintiff Pile and all members of the Florida Subclass were consumers within the meaning of the FDUTPA.

119.   At all relevant times hereto, Toshiba engaged in trade and/or commerce within the meaning of the FDUTPA.

120.   As alleged herein, the practices of Toshiba violated the FDUTPA for, *inter alia*, one or more of the following reasons:

a)   Toshiba omitted and concealed material facts from its marketing and advertising from Plaintiff Pile and all members of the Florida Subclass regarding the display technology of its "LED" TVs;

b) Toshiba made false and/or misleading statements of material fact regarding its "LED" TVs, which statements were likely to deceive the public; and

c) Toshiba knew, or was reckless in not knowing, that its statements about its "LED" TVs were false and/or misleading.

121. By the conduct described herein, Toshiba has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

122. The representations and omissions by Toshiba were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

123. Had Toshiba disclosed all material information regarding its "LED" TVs to Plaintiff Pile and all of the Florida Subclass members, they would not have purchased the televisions.

124. The foregoing acts and practices proximately caused Plaintiff Pile and other members of the Florida Subclass to suffer actual damages in the form of, among other things, a monetary premium for these televisions that they otherwise would not have paid had the televisions been described accurately, and they are entitled to recover such damages, attorneys' fees, and costs of suit.

**SEVENTH CAUSE OF ACTION**
**Violation Of New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-1 *Et Seq.*,**
**By Plaintiff Rodriguez Individually And On Behalf Of The New Jersey**
**Subclass, Against Defendants TAIS, Toshiba Corporation, and TLSC**

125. Plaintiff Diana Rodriguez incorporates by reference and re-allege each allegation set forth in paragraphs 1-75 hereinabove.

126. Plaintiff Rodriguez brings this claim on behalf of herself and the New Jersey Subclass.

127.   Plaintiff Rodriguez and the other members of the New Jersey Subclass, and Toshiba, are all "persons" within the meaning of the New Jersey Consumer Fraud Act ("CFA").

128.   Plaintiff Rodriguez and the other members of the New Jersey Subclass are "consumers" within the meaning of the CFA.

129.   At all relevant times material hereto, Toshiba conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

130.   The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

131.   Without limitation, Toshiba has engaged in deceptive practices related to the sale of televisions, including but not limited to marketing and selling the televisions as LED TVs when they were in fact LCD TVs.

132.   As described herein, Toshiba consciously failed to disclose material facts to Plaintiff Rodriguez and the other members of the New Jersey Subclass.

133.   Toshiba's unconscionable conduct described herein included the omission and concealment of material facts concerning the televisions.

134.   Toshiba intended that Plaintiff Rodriguez and the other members of the New Jersey Subclass rely on its deceptive practices and the acts of concealment and omissions described herein to, without limitation:  (a) induce customers to purchase Toshiba's so-called "LED" TVs in the mistaken belief that they are upgrading from their existing CCFL-lit LCD TVs; (b) to charge a premium for such televisions that Plaintiffs and other consumers would not have paid had the televisions been accurately labeled and described; and (c) to capture sales from other brand televisions that were accurately labeled as LED-lit LCD TVs.

135.   Had Toshiba disclosed all material information regarding its so-called LED TVs to Plaintiff Rodriguez and the other members of the New Jersey Subclass,

**COMPLAINT**

they either: (a) would not have purchased the televisions; or (b) would not have paid the premium charged had the televisions been accurately labeled and described.

136. The foregoing acts, misrepresentations, omissions, and unconscionable commercial practices caused Plaintiff Rodriguez and the other members of the New Jersey Subclass to suffer ascertainable damages, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorney's fees, and costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the proposed classes pray for judgment and relief as follows:

a. An order certifying that this lawsuit is properly maintainable as a class action and certifying Plaintiffs as the representatives of the Nationwide Class, or alternatively or in addition, certifying Plaintiff Martinez as the representative of the New Mexico Subclass, Plaintiff Pile as the representative of the Florida Subclass, and Plaintiff Rodriguez as the representative of the New Jersey Subclass;

b. An injunction prohibiting Toshiba from advertising LED-lit LCD TVs as LED TVs or LED HDTVs or LED televisions nationwide (or, alternatively, within the States of New Mexico, Florida, and New Jersey);

c. An order requiring Toshiba to engage in a corrective advertising campaign nationwide (or, alternatively, within the States of New Mexico, Florida, and New Jersey) that informs the consuming public that so-called LED TVs are in fact LCD TVs with an LED backlight;

d. An order requiring Toshiba to re-label (or recall) all new LED-lit LCD TVs in the possession of distributors or retailers or other resellers for resale nationwide (or, alternatively, within the States of New Mexico, Florida, and New Jersey) that do not contain a clear and conspicuous disclosure that the television is an LCD TV with an LED backlight.

**COMPLAINT**

1     e.     For the First and Second Causes of Action, restitution in an amount to

2  be determined at trial;

3     f.     For all other Causes of Action, compensatory, exemplary and punitive

4  damages according to proof;

5     g.     For attorneys' fees and costs; and

6     h.     For such other and further relief as may be just and proper.

7

8                  **DEMAND FOR JURY TRIAL**

9     Plaintiff demands a trial by jury of all issues properly triable thereby.

10

11                   RESPECTFULLY SUBMITTED,

12  DATED: April 13, 2016       By: /s/ Hayward J. Kaiser

13

14                    Hayward J. Kaiser (66365)

15                    Gilbert S. Lee (267247)
Mitchell Silberberg & Knupp LLP

16                    11377 West Olympic Boulevard
Los Angeles, CA 90064

17                    Telephone:    310-312-2000
Facsimile:    310-312-3100

18                    Email:       hjk@msk.com
gsl@msk.com

19                    Jonathan Shub (237708)

20                    Kohn Swift & Graf, P.C.
One South Broad Street, Suite 2100

21                    Philadelphia, PA 19107
Telephone:    215-238-1700

22                    Facsimile:    215-238-1968
Email:       jshub@kohnswift.com

23                    Francis O. Scarpulla (41059)

24                    Patrick B. Clayton (240191)
Scarpulla Law Firm

25                    456 Montgomery Street, 17th Floor
San Francisco, CA 94104

26                    Telephone:    415-788-7210
Facsimile:    415-788-6707

27                    Email:       fos@scarpullalaw.com
Email:       pbc@scarpullalaw.com

28

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Daniel R. Shulman*
Gregory R. Merz*
Kathryn J. Bergstrom*
Dean C. Eyler*
Gray Plant & Mooty
500 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:     612-632-3000
Facsimile:     612-632-4444
Email:   daniel.shulman@gpmlaw.com
            gregory.merz@gpmlaw.com
            katie.bergstrom@gpmlaw.com
            dean.eyler@gpmlaw.com

Attorneys for Plaintiffs and the proposed classes

*denotes pro hac vice application pending

**COMPLAINT**